Mary Ann BURKE, Appellant,

v.

William J. CASEY, Director, Central Intelligence Agency and Carol Burke, Appellees.

No. 82–1096.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 17, 1982.

Decided Feb. 25, 1983.

---

Henry Hammer, Columbia, S.C. (Alvin Hammer, Columbia, S.C., on brief) for appellant.

Penny Q. Seaman, Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., J. Frederick Motz, Baltimore, Md., Robert Greenspan, Dept. of Justice, Washington, D.C., Barbara Pollack, C.I.A., M. Natalie McSherry, Gerson B. Mehlman, Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., on brief), for appellees.

Before HAYNSWORTH, Senior Circuit Judge, and SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

Mary Ann Burke brought this action to compel the Central Intelligence Agency (CIA) to pay her a survivor annuity based on her former husband's service with the CIA and his participation in its retirement system. The district court granted summary judgment for the CIA and Mary Ann Burke appeals.

Thomas Burke was employed by the CIA from 1951 until his retirement in 1973. He died in 1980. He was married to Mary Ann Burke from 1949 to 1975. They were divorced in Maryland in December 1975, and Thomas married a second wife, Carol Burke, that same month. The final decree entered in the divorce between Thomas and Mary Ann Burke ratified and incorporated a separation agreement which provided in part:

> Notwithstanding any general provisions of this agreement to the contrary, the husband agrees to name the wife as his irrevocable beneficiary of the proceeds of his retirement fund from the U.S. Government on his death unless the wife dies or remarries.

At issue in this appeal is the meaning and effect of sections 204 and 221 of the Central Intelligence Agency Retirement Act ("the Act")[1] and a 1980 Executive Order[2] implementing the Act, as they apply to the circumstances of Thomas Burke's marriage, retirement, divorce, remarriage, and death in 1980. Simply stated the question is: who is entitled to the survivor annuity under the terms of the Act—Mary Ann, his first wife, with whom he was living at the time of his retirement; or Carol, his second wife, with whom he was living at the time of his death?

Section 204 of the Act provides in pertinent part:

> (a) Annuitants shall be participants who are receiving annuities from the fund and all persons, including surviving wives and husbands, widows, widowers, children, and beneficiaries of participants

1. Central Intelligence Agency Retirement Act of 1964 for Certain Employees, 50 U.S.C. § 403 note (1976).

2. Exec.Order No. 12197, 45 Fed.Reg. 14,833 (1980), *reprinted in* 50 U.S.C. § 403 note (Supp. IV 1980).

or annuitants who shall become entitled to receive annuities in accordance with the provisions of this Act.

(b) When used in this Act the term—

(1) "Widow" means the surviving wife of a participant who was married to such participant for at least one year immediately preceding his death or is the mother of issue by marriage to the participant.

50 U.S.C. § 403 note § 204.

Section 221(b)(1) reads as follows:

If a participant dies after having retired and is survived by a spouse to whom he or she was married at the time of retirement, or by a widow or widower whom he or she married after retirement, the spouse, widow, or widower is entitled to an annuity equal to 55 per centum of the amount of the participant's annuity computed as prescribed in paragraph (a) of this section, up to the full amount of such annuity specified by the participant as the base for such survivor benefits at the time of retirement. The annuity of the participant shall be reduced by 2½ per centum of any amount up to $3,600 specified by the participant as the base for such survivor benefit plus 10 per centum of any amount over $3,600 so specified. If at the time of retirement the participant does not desire any surviving spouse to receive an annuity under this paragraph he shall so state in writing to the Director.

Section 221(b)(4) provides:

An annuity which is reduced under this subsection shall, for each full month during which an annuitant is not married, be recomputed and paid as if the annuity had not been so reduced. Upon remarriage of the annuitant, the annuity shall be reduced by the same percentage reductions which were in effect at the time of retirement.

A participating employee throughout his employment contributes seven percent of his salary towards funding the retirement plan.[3] As is apparent from a reading of section 221(b)(1), the participant can do nothing to affect the designation of his widow to receive survivor benefits until the time of his retirement. The seven percent contribution obviously is not affected by the participant's decision to provide his surviving spouse survivor benefits vel non. The survivor benefits instead are funded by deductions from the participant's annuity received by him after retirement. The participant has the option of receiving a smaller pension with assurances of widow/widower survivor benefits, or a full pension with no survivor benefits. The statutory language defining the option creates an automatic survivor annuity unless the participant excludes it by affirmative written directions at the time of his retirement.

Thomas Burke "at the time of retirement" in 1973 provided no written directions—his retirement benefits therefore were automatically reduced and survivor benefits were assured. The CIA contends that Carol Burke, the second wife, is the proper recipient of the survivor benefits because under the statute only she qualifies as a "widow." Mary Ann Burke, the first wife, contends that she is entitled to these benefits[4] because she was married to Thomas at the time of his retirement; he elected then to provide the annuity to her; during their divorce he chose to make the election irrevocable; the reduction of his lifetime annuity was never rescinded; and he never elected to provide a survivor annuity for his second wife. Mary Ann Burke also contends that notwithstanding the provisions of the Act, she is entitled to the survivor benefits under the substantive law of Maryland by virtue of the divorce decree.

■ There is, of course, no happy solution whereby both the former spouse and the widow can receive benefits which in the

---

**3.** 50 U.S.C. § 403 note § 211(a).

**4.** The CIA retirement system provides survivor annuities for the surviving minor children of a participant in the program without an election or reduction in the participant's lifetime annui-

ty. 50 U.S.C. § 403 note §§ 221(c), (d). Consequently, there is no dispute concerning the annuity rights of Thomas Burke's minor children.

normal course of affairs each might rightfully expect to receive as an incident of marriage.[5] We agree with the trial court, however, that in enacting the CIA Retirement Act, Congress intended that the surviving widow/widower should be the beneficiary, not a surviving former spouse.

The principal reason for this conclusion is that there is no room for interpreting the statutory definition of "widow." As is evident from the plain language of section 204(b)(1), Congress intended the term to apply to that spouse to whom the participant was married at the time of his death. Section 221(b)(4) is practically conclusive in supporting this interpretation. It provides in effect that a retired participant who divorces his spouse shall have his retirement benefits recomputed so that he receives his full pension without deduction to pay for survivor benefits. Significantly, prior to 1980, the same subsection provided that upon remarriage the deduction should be reinstated automatically and the annuity again reduced. This later provision benefited a surviving spouse, not a surviving former spouse. The force of this conclusion is not diminished by Executive Order 12197,[6] which eliminated the automatic restoration of annuity reduction after remarriage. The Executive Order left in effect the language whereby a spouse's rights to survivor benefits were terminated upon divorce. Additionally, since the Executive Order was promulgated in 1980, it is of little assistance in determining the intent of Congress when it enacted the statute in 1964.

Mary Ann Burke also argues that Executive Order 12197, § 1–101(e) requires the CIA to recognize the Burke's 1973 Maryland divorce decree, which provided that Thomas Burke "agrees to name the wife as his irrevocable beneficiary of the proceeds of his retirement fund . . . ." Executive Order 12197, § 1–101(e) provides:

> Payments to an annuitant which are based upon his or her service shall be paid, in whole or in part by the CIA Retirement and Disability System to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation. Any payment under this provision to a person bars recovery by any other person. . . .

This argument, too, must fail. Paragraph (e) specifically applies to "payments to an annuitant which are based upon his or her service." A survivor annuity is not based upon the services of the recipient of the survivor annuity, but upon the services of the deceased retired spouse who paid for the survivor annuity.

Additionally, a primary purpose of Executive Order 12197 was to amend the Act so that it would conform to recent changes in the Civil Service Retirement System (CSRS).[7] Regulations of the Office of Personnel Management (OPM) involving a provision of the CSRS[8] which is parallel to

---

5. It is, of course, beyond the scope of this opinion to anticipate the outcome of any possible suit under Maryland law by Mary Ann Burke against her former husband's estate based on his agreement to provide her survivor benefits.

6. 45 Fed.Reg. 14,833 (1980), *reprinted in* 50 U.S.C. § 403 note (Supp. IV 1980).

7. The CSRS is codified under 5 U.S.C. §§ 8331 *et seq.* (1976). The President is authorized to maintain "existing areas of conformity" between the Civil Service and CIA retirement and disability systems under 50 U.S.C. § 403 note § 292.

8. 5 C.F.R. §§ 831.1701–.1711 (1982). The regulations implement in part 5 U.S.C. § 8345(j)(1), which provides:

> Payments under this subchapter [5 U.S.C. §§ 8331 *et seq.*] which would otherwise be made to an employee, Member, or annuitant *based upon his service shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation.* Any payment under this paragraph to a person bars recovery by any other person. (Emphasis added).

Executive Order 12197 § 1–101(e) indicate that section (e) does not apply to survivor annuities. Those regulations specifically exclude survivor annuities from the kinds of payments which may be subject to a court order or decree.[9]

█ Likewise, there is no merit to Mary Ann Burke's final contention. We perceive no conflict between Maryland and federal law as expressed in the Act, but even if there were a conflict, federal law controls. *See McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

Accordingly, the decision of the district court is affirmed.

AFFIRMED.

---

**9.** The OPM regulations interpret 5 U.S.C. § 8345(j)(1) as requiring the OPM "to comply with a provision for the apportionment of *retirement benefits* in a State court order, decree, or court-approved property settlement in connection with the divorce, annulment of marriage, or legal separation of a Federal employee or retiree." 5 C.F.R. § 831.1701 (1982) (em-

phasis added). They further provide that "[r]etirement benefits are subject to apportionment by court order only while the individual is living." *Id.* at § 831.1710(a). "Retirement benefits" are defined as including "employee annuities and refunds of retirement contributions but does not include survivor annuities or lump sum payments...." *Id.* at § 831.1702.